(No. 20340.—
BENJAMIN H. MARSHALL, Plaintiff in Error, *vs.* THE IN-
DUSTRIAL COMMISSION *et al.*—(MARY ALLESCH, Defend-
ant in Error.)

*Opinion filed December 18, 1930—Rehearing denied Feb. 6, 1931.*

MOSES, KENNEDY, STEIN & BACHRACH, (HERBERT H.
KENNEDY, and ALBERT LANGELUTTIG, of counsel,) for
plaintiff in error.

J. S. COOK, and FRANK T. SHARP, for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

The petitioner, by leave of this court, has brought here
for review the record of the circuit court of Cook county
confirming an award of the Industrial Commission against

him in favor of Mary Allesch as the dependent mother of Frank Allesch, deceased.

By stipulation of parties the only controverted questions before the court are: First, is the mother of an illegitimate child a parent within the provisions of the Workmen's Compensation act; and second, if so, was the claimant in fact dependent on the deceased, who was her illegitimate son.

Mary Allesch, while a single woman, gave birth to an illegitmate son, who went through life under the name of Frank Allesch, he assuming the name of the man his mother married although he was not adopted by nor was he the son of Allesch. The rights, if any, of Mary Allesch under the Compensation act rest upon sub-section (c) of section 7. (Cahill's Stat. 1929, chap. 48, par. 207.) The sub-section, in part, is as follows: "If no amount is payable under paragraphs (a) or (b) of this section and the employee leaves any parent or parents, child or children, grandparent, grandchild, or grandchildren, who at the time of injury were dependent upon the earnings of the employee, then such proportion of a sum equal to four times the average annual earnings of the employee as such dependency bears to total dependency but not less in any event than one thousand six hundred fifty dollars and not more in any event than three thousand seven hundred fifty dollars."

The word "parent" is defined in Webster's New International Dictionary as, "One who begets, or brings forth, offspring," and this is its ordinary meaning. Nowhere in the Workmen's Compensation act is it indicated that the word "parent" has a meaning different from that when it is used in its ordinary sense. While by common acceptation the word "parent," without limiting, defining or qualifying language, is ordinarily used to designate a legitimate relationship between a mother or father and their issue, yet the trend of modern legislation and court decisions has been toward a more liberal use of the term as regards the mother

of an illegitimate child. The harsh doctrines of the common law, which gave an unwedded mother and her illegitimate offspring little standing or protection, have been modified by the legislature and court decisions of this State. Under the common law an illegitimate had no inheritable blood and was kin to no one. In 1845 the legislature of this State abrogated the common law rule and provided that an illegitimate might inherit from its mother. Subsequent legislatures further extended the rights of illegitimates until 1872, when the present Statute of Descent was passed. The natural or unwedded mother is made a legitimate mother, or a "parent," under the Statute of Descent, and she and her illegitimate issue may inherit, one from the other. (Cahill's Stat. 1929, chap. 39, sec. 2.) By the Injuries act (Cahill's Stat. 1929, chap. 70, sec. 2,) a mother, as the next of kin, has the benefit of an action by the administrator of the estate of her deceased illegitimate issue for damages for wrongful death, as that act provides for the distribution of suit money to the widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate, and as was said in *Bales* v. *Elder,* 118 Ill. 436, citing *Miller* v. *Williams,* 66 id. 91, an illegitimate person is recognized as the child of its mother as regards the descent of property. This is true although nothing is said about an illegitimate or its mother in the Injuries act, but the Statute of Descent places a mother and her illegitimate issue on a plane of legitimacy. In construing section 2 of the Statute of Descent this court said in *Morrow* v. *Morrow,* 289 Ill. 135: "The tendency of the legislation in this State upon this subject shows an intention upon the part of the legislature to remove the rigors of the common law and to establish a rule of descent with reference to illegitimates consonant with the finer sense of justice and right and not to visit the sins of the parents upon the unoffending offspring."

Plaintiff in error cites the case of *Murrell* v. *Industrial Com.* 291 Ill. 334, in support of his contention that the mother of an illegitimate child is not a "parent" within the provisions of the Workmen's Compensation act; but, as a distinguishing feature of the *Murrell case,* a child was there claiming compensation from its putative father, while in the case at bar the claim for compensation is asserted by its mother. The law, for good and obvious reasons, does not recognize paternal parenthood of illegitimate children. The relationship of the mother and the illegitimate child is certain and easily capable of being determined, and the legislature by the Statute of Descent has recognized that an illegitimate child has a mother. That mother is his "parent." There is nothing in the statute that will allow an illegitimate to inherit from the father of such person, but the object of the framers of such act seems to have been to remove the common law disability of inheritance by illegitimates through the maternal line and in that regard place such persons upon the same footing as legitimate persons. (*Bales* v. *Elder, supra; Morrow* v. *Morrow, supra.*) It is our opinion, therefore, that the mother of an illegitimate child is its "parent" within the provisions of the Workmen's Compensation act.

With reference to the further contention that claimant was not, in fact, dependent on her illegitimate son, a review of the evidence shows that the deceased contributed $500 to the Allesch family the year before he died. Of this amount $100 was paid to the claimant's husband and approximately $50 was given to their son Tony. The claimant's living expenses were shown to be about $700 per year, one-half of which was received by income from the farm on which they lived. Her illegitimate son's contributions of $350 to her for her own use paid the remaining half of her living expenses. Dependency is established when it is shown that the claimant relied upon the deceased for his or her means of living. To establish dependency it is not necessary to

show that the claimant was without other means of support. (*Richardson Sand Co.* v. *Industrial Com.* 296 Ill. 335; *Peterson* v. *Industrial Com.* 331 id. 254; *L. M. & O. Motor Co.* v. *Industrial Com.* 335 id. 254.) In this case the evidence clearly shows that the claimant relied on the contributions of deceased for half her livelihood, and dependency is thus established.

The amount of compensation due the claimant was correctly determined, and the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*